BRYAN SCHRODER
United States Attorney

KIMBERLY SAYERS-FAY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: kim.sayers-fay@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 3:18-cr-00097-02-SLG |
| Plaintiff, | ) |
| vs. | ) |
| LOIS LATRILLA PHILLIPS, | ) |
| Defendant. | ) |

**UNITED STATES'
SENTENCING MEMORANDUM**

SUMMARY OF SENTENCING RECOMMENDATIONS

TERM OF IMPRISONMENT ................................................................. 96 MONTHS
SUPERVISED RELEASE ........................................................................... 5 YEARS
FINE ............................................................................................................... NONE
SPECIAL ASSESSMENT ........................................................................... $100.00

## I. INTRODUCTION

Lois Phillips, 46, got caught with a very significant amount of methamphetamine that she intended to sell: 4.8 kilograms. PSR ¶ 19. She had an additional 120 grams of methamphetamine in her house, and had conspired to sell a confidential informant (CI) 401 grams and 781 grams of methamphetamine just days before. These sales were in keeping with a course of conduct that had been going on for about a month. Phillips was clearly trafficking a very significant volume of methamphetamine.

This gravity of Lois Phillips' criminal conduct was immense. There can be no doubt that she had chosen to build her life around trafficking methamphetamine, a drug that kills some unfortunately addicts and devastates the lives of others. She was profiting from a deadly trade, as the $24,492 in cash drug proceeds recovered from her home evidenced.

The sentencing guidelines recommend a sentence of between 210 and 262 months for Phillips' crime, primarily because of the large quantities of methamphetamine involved. The United States, however, has agreed to an 8-year sentence, with which the United States Probation Office concurs, because of Phillips' lack of criminal history to this point in her adult life. She alone is responsible for her choices, which were awful and wrought havoc on Alaska while she was drug trafficking. However, her life history shows that she can be a productive member of society. For example, she has held down a job for ten years. Unlike her husband, she has decent prospects of rehabilitation, some of which she manifested by completing a 6-month intensive outpatient substance abuse program while this case was pending.

Given the foregoing, the parties have concluded a Rule 11(c)(1)(C) plea agreement that provides for a sentence of 8 years' of imprisonment to be followed by a period of supervised release to be determined by this Court. This punishment is significantly less than the guidelines advise, but still more than Phillips would have faced if she had chosen to avail herself of the safety valve provision, U.S.S.G. § 5C1.2.

Despite the vast quantity of methamphetamine involved, the United States believes this is a rare case in which a significantly below guidelines period of incarceration, followed by a significant period of supervised release, may best serve society and the competing considerations of 18 U.S.C. § 3553(a).

## II. SENTENCING GUIDELINES CALCULATION

### A. Probation Appropriately Addressed Defendant's Objection to Inclusion of Reference to Her Indirect Affiliation with the Hells Angels.

Defendant objects to inclusion, in PSR ¶13, that Phillips' husband is a member of the Hells Angels Motorcycle Club.

A PSR should include "any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or correctional treatment." Fed. R. Crim. P. 32(d)(2)(A)(iii). The United States believes that information pertaining to Phillips' indirect affiliation with the Hells Angels is important and appropriate because it bears on correctional treatment.

It is true that Phillips herself is not a member of the Hells Angels, which is exclusive to men. It is also true, however, that she enjoyed the benefits of life in the Hells Angels family. People responding to the social media messages concerning the identity of the

U.S. v. Lois Phillips
3:18-CR-00097-02-SLG

3

informant expressed support for both Charles Phillips and her. This information reflects on Phillips' character, just as her subsequent affiliation with Akeela outpatient group does as well.

Furthermore, it is important for the Bureau of Prisons to understand inmate's affiliations, whether they are de jure or de facto. Phillips may want to distance herself from the Hells Angels now, but the fact is that her alignment with them and her husband is well-known in the criminal community. It makes good sense for BOP to know as well. As Probation pointed out, it is also important information for them to know during Phillips' period of supervised release. No further modifications to PSR ¶ 13 are warranted.

### B. Phillips Maintained Two Premises for Distributing Controlled Substances; The Two-Level Enhancement Is Appropriate.

Defendant challenges application of the two-level enhancement under U.S.S.G. § 2D.1, which applies for maintaining a premises for the purpose of distributing a controlled substance, "including storage of a controlled substance for the purpose of distribution." *Id.* Application Note. 17. This challenge lacks merit.

The enhancement applies if defendant owned or rented a premises, or controlled access to the premises, if distributing a controlled substance was "one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id.*

This enhancement applies to Phillips because one of the primary or principal uses for defendant's rented home was to distribute drugs. The following facts support this assertion by a preponderance of the evidence:

U.S. v. Lois Phillips
3:18-CR-00097-02-SLG

4

a. On August 6, 2019, police arrested an individual with 781 grams of methamphetamine in a duffel bag that the individual carried out of Phillips' residence. The individual stated that he/she had bought that methamphetamine from Charles Phillips at the Phillips' house. PSR ¶ 13.

b. On August 7, 2019, Lois and Charles Phillips sold a CI 401 grams of methamphetamine at their house. This sale at the house was monitored and recorded. PSR ¶¶ 14-18. Defendant has admitted these facts.

c. On August 10, 2019, a search of the house resulted in the discovery of 120 grams of methamphetamine, $24,942 in US currency, and other tools of the drug trafficking trade, including digital scales and a large number of very distinct baggies from the Disney movie "Frozen," which were identical to baggies in which the methamphetamine was found. PSR ¶ 21. Defendant does not dispute these facts.

d. During the inception of the investigation, the CI told investigators that he/she had purchased methamphetamine from the Phillips nearly daily at their house for about a month. The CI specifically described that Lois Phillips would leave the house and return with the methamphetamine.

The enhancement applies to the Phillips' CONEX unit as well. The evidence is that Lois Phillips rented the CONEX unit and maintained the key to it at the aforementioned house. PSR ¶¶ 21, 24. The CONEX contained 4.84 kilograms of methamphetamine. PSR ¶ 25. Lois Phillips left the residence and visited the CONEX before returning, on August

U.S. v. Lois Phillips
3:18-CR-00097-02-SLG
5
Case 3:18-cr-00097-SLG   Document 162   Filed 10/16/19   Page 5 of 9

7, 2019, to sell the CI the methamphetamine that Charles Phillips dispatched her to go get. PSR ¶ 18. There is thus no doubt that one of the primary purposes of that CONEX was to store the treasure trove of methamphetamine which they sold, a pound or so at a time, from the house, as the $24,942 in drug proceeds in the home made clear. PSR ¶ 21. In short, the Phillips did not just maintain one premises for storing and distributing drugs: they maintained two. The enhancement is well-warranted.

Taking the foregoing into account, the USPO correctly calculated that Phillips Adjusted Offense Level is 40. PSR ¶ 35.

### C. Acceptance of Responsibility

The United States supports credit for Acceptance of Responsibility under § 3E1.1 and moves for the further one-point decrease in recognition of the fact that Phillips' timely plea permitted the United States to avoid preparing for trial. With such credit, Phillips' Total Offense Level becomes 37. PSR ¶ 38.

### D. Guideline Range

Given Phillips' Total Offense Level of 37 and Criminal History Category of I, the advisory guideline range is 210 to 262 months of imprisonment. PSR ¶ 100. At least four years of supervised release is required by statute; up to a lifetime of supervised release may be imposed.

## III. SECTION 3553(A) FACTORS

### A. Nature, Circumstances & Seriousness of the Offense

As noted above, Phillips sold large quantities of methamphetamine out of her home.

U.S. v. Lois Phillips
3:18-CR-00097-02-SLG

6
Case 3:18-cr-00097-SLG   Document 162   Filed 10/16/19   Page 6 of 9

Methamphetamine kills people.[1] The overdose epidemic disproportionately affects Alaska Native people.[2] It is difficult to overstate the severity of Phillips' crime: she was involved, reportedly on a near daily basis, in facilitating wholesale methamphetamine transactions, and she maintained a stash of over 4 kilograms of methamphetamine in a CONEX. There is nothing mitigating about the nature, circumstances, or seriousness of the offense.

### B. History and Characteristics of the Defendant

By contrast, Phillips' history and characteristics do suggest that deviation from the guideline range may adequately protect society and afford just punishment. Phillips, 46, has a long history of drug involvement, but does not have a long criminal record. Indeed, she essentially has no criminal record.

Unlike many drug traffickers, Phillips has had periods of her life in which she productively contributed to society. She worked as a general manager for Alaska Cleaners for about ten years, PSR ¶ 87, and appears to continue to enjoy their support, as Alaska Cleaners also employed her while she was on pretrial release.

Phillips has also made some strides toward addressing her drug dependency. She reportedly completed Akeela's 6-month intensive outpatient substance abuse program and also earned accolades from peers and persons associated with a sober/transitional living environment where she resided pre-trial.

---

[1] *See* Centers for Disease Control and Prevention, "Drug Overdose Deaths Involving Cocaine and Psychostimulants with Abuse Potential, United States, 2003-2017," available at https://www.cdc.gov/mmwr/volumes/68/wr/mm6817a3.htm#T1_down

[2] *See id.*, Table 4, noting that among demographic groups, American Indians and Alaska Natives have a much higher death rate than other groups.

U.S. v. Lois Phillips
3:18-CR-00097-02-SLG

7

In the government's view, there are reasons for optimism concerning Phillips' potential for rehabilitation. Her prospects will likely be greater so long as her husband remains incarcerated. The government's recommendation of an 8-year sentence reflects these facts.

### C. The Need to Afford Adequate Deterrence

In this case, the United States believes that the need for personal deterrence is likely low. Phillips has never served time before. Eight years will likely influence her life. One hopes it will influence her choices down the road.

## IV. CONCLUSION

For the reasons stated above, the United States recommends a sentence of 8 years of imprisonment for Phillips. The United States believes this sentence strikes a balance, recognizing that Phillips has potential for rehabilitation following her very serious crime, but that her sentence should not be as low as it might be for a similarly situated person who chose to avail himself or herself of U.S.S.G. § 5C1.2's "safety valve" provision and undertake the related obligations, which also serve society.

The United States also recommends imposition of a five-year period of supervised release, along with the conditions recommended by probation. The Court may also want to consider whether it is appropriate to impose a community service requirement in lieu of a fine. Phillips' crime wrought much havoc on society in Alaska; it seems appropriate to require her to endeavor to make amends through a positive contribution following her release from prison.

U.S. v. Lois Phillips
3:18-CR-00097-02-SLG

8
Case 3:18-cr-00097-SLG   Document 162   Filed 10/16/19   Page 8 of 9

RESPECTFULLY SUBMITTED on October 16, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/ Kimberly Sayers-Fay
KIMBERLY SAYERS-FAY
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2019,
 a true and correct copy of the foregoing
was served electronically on the following:

Michelle Nesbett

s/ Kimberly Sayers-Fay
Office of the U.S. Attorney

U.S. v. Lois Phillips
3:18-CR-00097-02-SLG